IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | | |
|---|---|---|
| DOUGLAS WEBER,<br><br>Plaintiff,<br><br>vs.<br><br>DELTA DENTAL INSURANCE COMPANY,<br><br>Defendant. | ) | CV 11–21–H–DWM<br><br>ORDER |

This is a wrongful discharge from employment case. Delta Dental Insurance Company is the former employer, and Douglas Weber is the former employee. Delta Dental moves for summary judgment and moves to exclude evidence alleging that it violated a "90-Day Performance Management Plan" on which it placed Weber. Both motions are denied for the reasons set forth below.

## BACKGROUND

Delta Dental is an insurance company that offers dental benefits in Montana. It works through a business partner, Insurance Coordinators of Montana, Inc., to sell and service its benefits plans. Insurance Coordinators of Montana is the principal contact for customers that purchase Delta Dental products, both

during and after the purchase.

Delta Dental hired Weber on January 22, 2008, to work as a Sales Account Executive. Weber had worked for Insurance Coordinators of Montana immediately before Delta Dental hired him. Delta Dental's job-offer letter states that Delta Dental "from time to time in its sole discretion, may adjust the salaries and benefits paid to you and its other employees as well as reporting relationships, job titles and responsibilities."[1] Delta Dental claims that, because of the relationship between Delta Dental and Insurance Coordinators of Montana, Weber's job duties were different than those performed by other Sales Account Executives. In addition to the duties of a Sales Account Executive, Delta Dental also expected Weber to perform some of the duties of an Account Manager.

On May 24, 2010, Delta Dental put Weber on a 90-Day Performance Management Plan to improve his purported subpar job performance. Weber was put on the 90-Day Plan because staff with Insurance Coordinators of Montana were frustrated with Weber's incomplete communications and lack of follow up. Generally speaking, the 90-Day Plan required Weber to improve his performance and communications with Insurance Coordinators of Montana or face termination.

---

[1] Notably this unilateral language does not constitute a contract for employment services that would preclude application of Montana's wrongful discharge law. Section 39-2-912(2) M.C.A.

The 90-Day Plan also indicated that Jim Dole (Weber's supervisor) or Robert Budd (with Human Resources) would meet every 30 days with Weber to discuss his progress.

According to Delta Dental, Weber's performance did not improve. In its opening brief, Delta Dental provides ten detailed examples of how Weber failed to improve his performance. Generally speaking, those examples tend to show that Weber would not return calls from staff at Insurance Coordinators of Montana or follow up with information that they requested. Weber does not contest Delta Dental's factual account of those examples. Instead, he claims that he performed poorly because Delta Dental did not provide him with the tools, training, and resources that he needed in order to succeed at his job. Weber claims, for example, that Delta Dental did not provide him with the computer software that he needed or provide him with adequate training for his Account Manager responsibilities. He also claims that neither Dole nor Budd met with him while he was on the 90-Day Plan in order to discuss how he could improve.

Delta Dental fired Weber on October 1, 2010. In its termination letter, Delta Dental stated that it was firing Weber because of his "lack of comprehensive and timely communication." Weber filed this lawsuit against Delta Dental in state

court on January 21, 2011.[2] Delta Dental then removed it on April 20, 2011.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*; *see also Russell v. Daiichi-Sankyo, Inc.*, 2012 WL 1793226 (D. Mont. May 15, 2012).

## ANALYSIS

Under Montana's Wrongful Discharge from Employment Act, a discharge is

[2] The state court complaint is dated January 21, 2010, but that is apparently a typo.

wrongful only if:

> (a) it was in retaliation for the employee’s refusal to violate public policy or for reporting a violation of public policy;
>
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer violated the express provisions of its own written personnel policy.

Mont. Code Ann. § 39–2–904.

Here, Weber claims that Delta Dental did not have good cause to discharge him and that it violated its own written personnel policy. Delta Dental, on the other hand, argues that it had good cause, that it did not violate its own written personnel policy, and that any evidence alleging that it violated its written personnel policy should be excluded.

**I. Good cause**

An employer has “good cause” to discharge an employee when it has “reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, a disruption of the employer’s operation, or other legitimate business reasons.” Mont. Code Ann. § 9–2–903(5).

Here, Delta Dental allegedly discharged Weber because he failed to improve his performance under the 90-Day Performance Management Plan. Instead of

challenging the alleged facts that led to his discharge, Weber claims that Delta Dental did not have good cause to discharge him because (1) Delta Dental failed to provide Weber with the tools, training, and resources he needed to comprehensively and timely communicate with Insurance Coordinators of Montana and (2) Delta Dental violated its own personnel policy by not complying with the 90-day Performance Management Plan on which it placed Weber.

Only the first argument is subject to the "good cause" standard. The second argument related to the personnel policy is not a question of good cause. Whether an employer had good cause to terminate an employee and whether the employer violated its own written personnel policy are separate questions. Montana Code Annotated § 39–2–904(1). Weber's only argument about good cause is that Delta Dental did not provide him with adequate training, tools, and resources.

Weber's good-cause contention raises a novel question that neither the Montana Supreme Court nor this Court has addressed. That question is: When an employee fails to satisfactorily perform his job duties, does the employer have good cause to discharge the employee if the employee's poor performance is the consequence of the employer's failure to provide sufficient tools, training, or resources?

The closest that the Montana Supreme Court has come to addressing this

issue was in *Andrews v. Plum Creek Manufacturing*, *LP*, 27 P.3d 426 (Mont. 2001). There, Plum Creek discharged Andrews, who had been hired as an "invoice production clerk." *Id.* at 427. Her duties included managing deposits, maintaining records of petty cash, and maintaining retail sales accounts. *Id.* Plum Creek management admitted that Andrews' training was minimal, she received no job evaluations, there were no written procedures governing her job responsibilities, and her job performance had generally been "adequate." *Id.* Plum Creek removed her from her position, though, because it began to notice discrepancies in her record keeping. *Id.* Andrews did not deny the discrepancies but claimed they were the result of poor training and no written procedures.

Plum Creek argued that—regardless of whether it was at fault—it had good cause to discharge Andrews because she failed to satisfactorily perform her job duties:

> Plum Creek asserts that the plain language of § 39–2–903(5), MCA (1999), provides that failure to satisfactorily perform job duties constitutes good cause to discharge an employee, regardless of who is at fault for that failure. Based on that statute, Plum Creek argues that it is irrelevant who may be blamed for Andrews's poor job performance. To establish a genuine issue, Plum Creek contends that Andrews needed to present evidence that she had satisfactorily performed her job duties. And, Plum Creek argues, none of Andrews's evidence suggests that she satisfactorily performed her job; rather, the evidence merely presents explanations for her failure to satisfactorily perform her job duties.

*Id.* at 428–29.

The *Andrews* Court did not have to respond to Plum Creek's argument because Andrews never conceded that she performed her job poorly. Instead, she argued that she satisfactorily performed her job duties and that it was the "record-keeping *system* [that] was faulty." *Id.* at 428. The Court therefore concluded that Andrews had raised a genuine issue of material fact regarding her job performance that precluded summary judgment.

If the Montana Supreme Court had reached Plum Creek's argument—that is, courts should not consider whether the employer was at fault for an employee's poor performance when determining whether the employer had good cause to discharge an employee—the Court would likely have rejected it. Montana's Wrongful Discharge from Employment Act states that an employer has good cause to discharge an employee "based on a failure to satisfactorily perform job duties." Mont. Code Ann. § 39–2–903(5). But the grounds for a good cause discharge must also be "reasonable job-related grounds." *Id.* An employer cannot reasonably discharge an employee for poor performance if the employer is at fault for the poor performance. It would be unreasonable, for example, for a contractor to hire a construction worker to help build a house, but not give the worker the necessary tools, and then fire him for failing to do his job. Similarly a software company that

hires a software engineer but fails to provide a computer to develop the software could not fire an employee for good cause. If the engineer does not satisfactorily develop the software, does the company have good cause to discharge her? In both instances, the worker fails to satisfactorily perform his or her job duties, but termination would be unreasonable when the employer does not give the employee the opportunity or resources to satisfactorily perform.

Here, unlike the employee in *Andrews*, Weber takes no issue with Delta Dental's allegation that he failed to satisfactorily perform his job duties. Instead, he claims that he failed to satisfactorily perform his job duties because Delta Dental did not provide him with the necessary tools, training, or resources. Weber claims:

1. Delta Dental hired Weber as an Account Executive but then later required him to perform the additional job duties of an Account Manager without adequate training or resources.

2. In order to fulfill Insurance Coordinators of Montana's service requests, Weber had to communicate with other Delta Dental employees in other states, but those other employees failed to adequately respond to Weber.

3. Weber requested training, assistance, accommodation, and access to additional systems in order adequately fulfill service requests but never received them.

4. During the time at issue, Delta Dental began using a different information system and this conversion caused problems with

customer service functions.

In short, Weber claims he “was blamed for something that was not his fault.”

Delta Dental insists that it gave Weber all the training, tools, and resources he needed. It maintains that Dole, Weber’s supervisor, tried to help him use organizational tools to facilitate better communication, offered performance evaluations, and gave him additional training. Delta also asserts that Dole was previously able to perform Weber’s duties with the same training, tools, and resources.

Whether Weber needed additional training, tools, and resources to satisfactorily perform his job duties is a fact question. Here, the parties put forward conflicting factual accounts. Delta Dental claims that it offered training for the information system conversion in 2010. Weber swears that he was not provided with that training because his supervisor cancelled the training with no explanation. He insists that, without access to the computer systems, he could only solve service problems by contacting other Delta Dental employees in Texas, Georgia, and California. Weber maintains that he told Dole about the support and resources that he needed to effectively work with Insurance Coordinators of Montana and that, after Weber was fired, Delta Dental reconfigured its operations to make that support and resources available.

Delta Dental takes issue with the necessity of such support and resources, as well as all the other training, tools, and resources that Weber claims he needed. It further reasons that Weber has not produced specific factual allegations that raise a genuine issue of material fact. Delta Dental claims it offered Weber training on the system conversion, and he says he never received it because his supervisor cancelled the training. That is a material dispute.

Given the factual disputes, they must be construed in favor of Weber. Consequently, Delta Dental's motion for summary judgment as to good cause is denied.

## II. Written personnel policy

Weber also insists that he was wrongfully discharged because Delta Dental violated the express provisions of its own written personnel policy. There are two documents here that might constitute a written personnel policy: (1) the Employee Handbook for managers and (2) Weber's 90-Day Performance Management Plan. Delta Dental moves for summary judgment on this claim, and it moves to exclude evidence alleging that it violated the 90-Day Plan.

### A. Motion in limine

Delta Dental does not seek to exclude all evidence related to the 90-Day Plan. It acknowledges that Weber was discharged for failing to comply with the

Plan's terms. Instead, Delta Dental seeks to exclude evidence and argument alleging that Delta Dental (1) "violated its written personnel policies by placing Weber on the [90-Day Plan]" or (2) "violated Weber's [90-Day Plan] in discharging him." This motion is also denied.

**1. Weber's placement on the 90-Day Plan**

Delta Dental argues that Weber's placement on the 90-Day Plan does not involve a discharge and, therefore, it is not relevant to Weber's wrongful discharge claim. Weber never reasons to the contrary, he does not insist that his placement on the 90-Day Plan was the wrongful discharge. Instead, Weber asserts that Delta Dental's failure to comply with the provisions in the 90-Day Plan is what gave rise to the wrongful discharge.

**2. Delta Dental's alleged violation of the 90-Day Plan**

Delta Dental argues that its alleged violation of the 90-Day Plan should be excluded from any trial because the 90-Day Plan is not a written personnel policy. Whether the 90-Day Plan is a written personnel policy is a question for the jury.

"A written personnel policy does not necessarily have to be an employee handbook." *Williams v. Plum Creek Timber Co., Inc.*, 264 P.3d 1090, 1097 (Mont. 2011) (citing *Kearney v. KXLF Comms., Inc.*, 869 P.2d 772 (Mont. 1994)). Under Montana law, whether a document is part of an employer's written personnel

policy is a fact question. *Williams*, 264 P.3d at 1097. In *Williams*, an employee argued that a "pre-transfer evaluation form," which determined which employees would be transferred to other facilities, constituted a written personnel policy. *Id.* The Montana Supreme Court did not resolve the question. Instead, it concluded "that conflicting inferences could be drawn from [the] evidence and that reasonable persons could conclude that the evaluation form was part of Plum Creek's written personnel policy . . . ." *Id.* Based in part on this conclusion, the Court held that the district court erred in granting summary judgment in favor of the employer. *Id.* at 1097–98.

Here, Weber claims that Delta Dental violated its own written personnel policy by violating its Employee Handbook for managers, as well as the terms of Weber's 90-Day Performance Management Plan. Delta Dental's Employee Handbook for managers reads:

> Although the employment relationship may be terminated at will by the employee or the company, without following any formal system of discipline or warnings, the company often exercises its discretion to use a progressive discipline procedure to ensure a fair method of disciplining employees. When followed, the progressive discipline system is intended to give employees advance notice, whenever possible, of problems with their conduct or performance in order to provide you an opportunity to correct problems.

Consistent with the Handbook, Delta Dental employed a progressive

discipline procedure by putting Weber on the 90-Day Performance Management Plan.[3] The Plan stated that Jim Dole or Robert Budd would meet with Weber every 30 days to "discuss [Weber's] progress." Weber, though, claims that neither Budd, Dole, or anyone else ever met with him to discuss his progress. Without these meetings, Weber reasons, he had no directed way of knowing how he needed to improve.

Delta Dental argues that the 90-Day Plan is not a written personnel policy because it is not a policy of general applicability that applies to all employees. There are at least two problems with this argument. First, accepting the proposition that the 90-Day Plan is only a document that Delta Dental tailored to Weber's unique circumstances does not resolve the issue. The pre-evaluation form in *Williams* was also unique to Williams. There, the Montana Supreme Court concluded that whether that tailored document was a written personnel policy was a question of fact for the jury. So too here.

Second, Delta Dental acknowledges that Weber was fired for failing to comply with the provisions of the 90-Day Plan. That acknowledgment suggests

---

[3] Delta Dental argues that the Court should not consider the 90-Day Plan because it was not part of the "discharge action." The argument is not compelling. The 90-Day Plan was part of the discharge action because Delta Dental used it as progressive discipline and ultimately discharged Weber for failing to follow it.

that it recognized that the 90-Day Plan was part of Weber's progressive discipline. As such, it is inextricably linked to Weber's discharge—the terms of the discharge are based entirely on the terms of the 90-Day Plan.

Moreover, Delta Dental's Employee Handbook for managers states that when it uses progressive discipline, it will ensure a "fair method of disciplin[e]." Delta Dental claims it discharged Weber for failing to comply with the 90-Day Plan, yet a jury might conclude that Delta Dental itself violated the provisions of that Plan. Delta Dental's alleged perversion of the 90-Day Plan might very well lead a jury to conclude that it violated its Employee Handbook when it discharged Weber.

**B. Motion for summary judgment**

For many of the same reasons given its motion in limine, Delta Dental also claims that it is entitled to summary judgment on Weber's claim that Delta Dental violated its written personnel policy when it discharged him. The motion in this regard is also denied.

Construing the facts in Weber's favor, a reasonable jury might conclude that Delta Dental violated the express terms of its written personnel policy when it discharged Weber. A reasonable jury might conclude that, taken together, the Handbook and the 90-Day Plan constitute an express written personnel policy,

even though the Plan is not expressly part of the Handbook. *Williams*, 264 P.3d at 1097; *Kearney*, 869 P.2d 772. And that same jury might also conclude that Delta Dental violated the terms of that policy by failing to meet with Weber in order to evaluate his progress. Then again, the jury might conclude otherwise. In either case, the question is for the jury, not the Court.

In its reply brief, Delta Dental claims that "Weber abandons his argument [that] Delta violated the express provisions of a 'written personnel policy' through alleged [90-Day Plan] violations." Not so. Weber never concedes that the 90-Day Performance Management Plan was not a written personnel policy.

Delta Dental also insists that it did not violate the express terms of its Employee Handbook because the Employee Handbook language—which requires "a fair method of disciplining employees"—is only "aspirational." A "fair method," Delta Dental asserts, is whatever method it considers is fair. That argument is one to make to a jury. The jury will decide whether the process was fair. If it was, Delta has no concern. If it wasn't, there will be a price to pay determined by the jury.

There are material fact questions as to whether Delta Dental violated the express provisions of its written personnel policies when it discharged Weber. Delta Dental's motion for summary judgment is denied.

## CONCLUSION

There are genuine issues of material fact as to whether Delta Dental had good cause to discharge Weber and whether Delta Dental violated its personnel policies when it did so. Evidence alleging that Delta Dental violated the 90-Day Plan should not be excluded. Delta Dental's motion for summary judgment and its motion in limine are both denied.

IT IS ORDERED that Delta Dental Insurance Company's motion for summary judgment (doc. 24) is DENIED.

IT IS FURTHER ORDERED that Delta Dental Insurance Company's motion in limine (doc. 37) is DENIED.

Dated this 9th day of August 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT